SUSAN JANE M. BROWN (OSB #054607)
SILVIX RESOURCES
4107 NE Couch St.
Portland, OR 97232
(503) 680-5513
sjb@silvix.org

*Attorney for Proposed Defendant-Intervenor Yurok Tribe and Defendant-Intervenors Environmental Protection Information Center, Klamath-Siskiyou Wildlands Center, Umpqua Watersheds, Conservation Northwest, and Marin Audubon Society*

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **FRIENDS OF ANIMALS,** | Civ. Case No. 3:24-cv-01928-AN |
| *Plaintiff,* | |
| vs. | **MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT OF MOTION** |
| **HUGH MORRISON,** in his official capacity as the Regional Director of the United States Fish and Wildlife Service, and **THE UNITED STATES FISH AND WILDLIFE SERVICE,** an agency of the United States, | |
| *Defendants,* and | |
| **ENVIRONMENTAL PROTECTION INFORMATION CENTER, KLAMATH-SISKIYOU WILDLANDS CENTER, UMPQUA WATERSHEDS, CONSERVATION NORTHWEST, MARIN AUDUBON SOCIETY,** and **YUROK TRIBE** | |
| *Defendant-Intervenors and* | |

*Proposed Defendant-Intervenor.*

# MOTION

The Yurok Tribe (the Tribe) moves to join Environmental Protection Information Center, Klamath-Siskiyou Wildlands Center, Umpqua Watersheds, Conservation Northwest, and Marin Audubon Society (collectively "existing Defendant-Intervenors") and intervene as of right as Defendants in the above-titled action under Federal Rule of Civil Procedure 24(a). In the alternative, the Tribe moves for permissive intervention as Defendants under Federal Rule of Civil Procedure 24(b). Counsel for the Tribe and existing Defendant-Intervenors conferred in good faith with opposing counsel prior to filing this motion. Plaintiff's counsel states that they do not oppose this motion, and Federal Defendants have taken no position on this motion.

In support of this motion, the Tribe refers the Court to the following Memorandum of Points and Authorities and the Declaration of Tiana Williams-Claussen, filed herewith.

# MEMORANDUM OF POINTS AND AUTHORITIES

The Tribe seeks to intervene as a Defendant in this challenge to a decision by the United States Fish and Wildlife Service (FWS) to implement a barred owl control program necessary to the conservation and recovery of the northern spotted owl (NSO), a species listed as Threatened with extinction pursuant to the Endangered Species Act of 1973, 16 U.S.C. §§ 1531-1544. The Tribe has proactively stewarded lands containing northern spotted owls and their habitat since time immemorial, developed a northern spotted owl conservation plan for its lands in 2021, and has been engaged in barred owl removal on Yurok lands under state and federal scientific collecting permits since 2023. Declaration of Tiana Williams-Claussen ¶¶ 3, 12-13. In this case, the Tribe seeks to support the FWS's decision to further the conservation of the northern spotted

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO INTERVENE,
*Friends of Animals v. Morrison et al.*, 3:24-cv-01928-AN

2

SILVIX RESOURCES
4107 NE Couch Street
Portland, Oregon 97232

owl by controlling populations of the barred owl, an invasive species that imperils the continued existence of the northern spotted owl as well as numerous natural and cultural resources important to the Tribe.

The Tribe respectfully asks this Court for leave to intervene on behalf of Federal Defendants. The Tribe has an unparalleled history of involvement with the conservation of the northern spotted owl. As explained below, the Tribe fully satisfies the standard for intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure. In the alternative, the Tribe satisfies the standard for permissive intervention under Rule 24(b).

**PROPOSED DEFENDANT-INTERVENOR YUROK TRIBE**

The Yurok people have been stewards of the Yurok homeland since time immemorial. Williams-Claussen Decl. ¶ 3. Yurok homelands encompass these lands:



In Yurok understanding, Yurok peoples' reason for being has been to actively support world renewal in balance in terms of its physical, ecological, and spiritual components.

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO INTERVENE,
*Friends of Animals v. Morrison et al.*, 3:24-cv-01928-AN

4

SILVIX RESOURCES
4107 NE Couch Street
Portland, Oregon 97232

Williams-Claussen Decl. ¶ 3. "The Yurok Tribe is committed to protecting and restoring the natural resources on their lands, as mandated by the Yurok Tribe's Constitution, and to traditions which mandate careful stewardship of natural, native ecosystems." *Id.*

Declines in northern spotted owl populations, exacerbated by barred owl (BADO) expansion into the northern spotted owl's range, compromises

> the Tribe's ability to achieve management goals set forth in the Yurok Tribe Forest Management Plan and Blue Creek Salmon Sanctuary and Yurok Community Forest Conservation and Management Plan (BCMP), which are designed to support threatened and endangered species conservation. The BCMP states that protection, maintenance, and enhancement of habitat for threatened and endangered species and the identification and eradication of invasive species are of critical importance.

Williams-Claussen Decl. ¶ 5. While barred owls "are native to North America and the ecologically arbitrary boundaries of the United States, they are not native to the Yurok ecoregion and are a detriment to the health, balance, and integrity of [the] local ecosystem." *Id.* at 6.

The Yurok Tribe

> ...has been conducting protocol-level NSO surveys to support timber harvests, restoration, and fuels reduction since 2014 and in 2020 began focused surveys across a wider expanse of Yurok lands in preparation for potential experimental BADO removal. BADO were first identified in California in 1976, and first documented by the Yurok Tribe's tribally managed lands in 2014, concurrent with the first year of Tribal surveys for *Strix* species. Findings indicate a severe decline in NSO co-occurring with establishment of a BADO population on Yurok Lands, a negative trend which has been maintained for the 11 years of *Strix* species monitoring on Tribal lands. Areas of historically highest abundance of NSO on Tribal lands, including the Blue Creek and Kep'-el watersheds which are areas of high priority management to the Tribe for ecological and cultural restoration, are now fully absent of NSO detections and are increasing in BADO detections. BADO were first detected in the Yurok Pek-won Creek watershed in 2021, and as of 2025 have already established more than one breeding pair. The threat from BADO invasion on Yurok Tribal lands is immediate and worsening rapidly.

Williams-Claussen Decl. ¶ 7. To address the threats from barred owls, the Yurok Tribe coordinates with federal and state agencies to improve northern spotted owl and other wildlife habitat. *Id.* at ¶¶ 8-9. However, "[d]espite these conservation efforts, the establishment of BADO

on Yurok Lands is a hinderance to [the Tribe's] ability to manage, support, and restore native species." *Id*. at 10.

Given the demonstrated success of experimental barred owl control efforts, the Tribe has undertaken barred owl management on its lands pursuant to its *Northern Spotted Owl Conservation Plan for Yurok Tribe Lands*. Williams-Claussen Decl. ¶¶ 10-12. That "plan represents the next phase of NSO conservation efforts on Yurok lands. It outlines the values, goals, and objectives of the Tribe's land management actions; purpose and need of experimental BADO removals on Yurok Lands; experimental design approach for BADO removal; proposed BADO removal methods; and long-term adaptive management approach to maintain a viable NSO population." *Id.* at ¶ 12. The Tribe

> ...has been actively participating in BADO removal under federal and state scientific collecting permits since 2023. Though removals were begun only recently, tribal biologists are already documenting increased NSO detections in areas where BADO removal is occurring. We are one of three Tribal nations requesting inclusion in the USFWS's Barred Owl Management Plan. Inclusion in this plan would facilitate our participation in BADO removal and streamline permitting processes, allowing us more flexibility in managing our lands to conserve our resources.

*Id.* at ¶ 13.

According to Tribal wildlife experts, "the Yurok Tribe's participation in BADO removal, as part of a comprehensive, coordinated, and multi-entity Barred Owl Management Strategy, will improve the conservation status of the NSO." Williams-Claussen Decl. ¶ 15. "Should the complainants by Friends of Animals against the []FWS prevail, and the []FWS efforts be halted, it would contribute to and significantly increase the potential for extinction of the NSO." *Id.* at ¶ 14. Such a result is antithetical to the Tribe's beliefs, culture, and Constitution. *Id*. at ¶ 3.

## ARGUMENT

Conservation of the northern spotted owl and its habitat is central to the Yurok

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO INTERVENE,
*Friends of Animals v. Morrison et al.*, 3:24-cv-01928-AN

6

SILVIX RESOURCES
4107 NE Couch Street
Portland, Oregon 97232

worldview. Williams-Claussen Decl. ¶ 3. The spread of invasive barred owls into native northern spotted owl habitat compromises the Tribe's ability to manage its lands for the benefit of its people in service of the Tribe's beliefs, culture, and Constitution. *Id*. at ¶¶ 5-13. If Plaintiff is successful in its lawsuit and barred owl management is halted, such a result would irreparably impair the Tribe's interests. *Id.* at ¶ 14. Thus, under the intervention standards discussed below, the Tribe's motion to intervene should be granted.

I.     **THE TRIBE IS ENTITLED TO INTERVENE AS OF RIGHT.**

The Federal Rules of Civil Procedure provide the following:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). The Ninth Circuit and its district courts use a four-part test to evaluate motions to intervene: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks and citation omitted); *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Moreover, "while an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention." *Prete*, 438 F.3d at 954. "In addition to mandating broad construction, our review is guided primarily by practical considerations, not technical distinctions." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). In the present case, the Tribe

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO INTERVENE,
*Friends of Animals v. Morrison et al.*, 3:24-cv-01928-AN

7

SILVIX RESOURCES
4107 NE Couch Street
Portland, Oregon 97232

satisfies each of the elements for intervention under Rule 24(a).

      A.    **The Tribe's Motion for Intervention Is Timely.**

In determining whether an intervention motion is timely, this Court should consider three factors: "1) the stage of the proceeding at which an applicant seeks to intervene; 2) the prejudice to other parties; and 3) the reason for and length of the delay." *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986), *cert. denied*, 480 U.S. 946 (1987). In this case, the Tribe's motion to intervene is timely because the present case is in its very early stages. Plaintiff Friends of Animals (FOA) filed its complaint on November 19, 2024, and this Court is still considering Plaintiff's motion to amend its Complaint. No merits issue of any kind, much less a core issue, has yet been scheduled, briefed, or decided; and the Tribe's participation would not delay any deadline set by this Court.

Granting this motion to intervene would not prejudice any party. The Tribe seeks intervention, as discussed below and in the attached declaration, to protect the Tribe's interests in ensuring the continued viability of the northern spotted owl from the threats posed to the species and Tribal resources from the invasive barred owl. If intervention is granted, the Tribe will comply with all court-ordered briefing schedules to serve the interest of efficiency.

Counsel for the Tribe and existing Defendant-Intervenors contacted counsel for Plaintiff to ascertain their positions on this motion. Plaintiff's counsel states that they do not oppose this motion, and Federal Defendants have taken no position on this motion.

Granting the Tribe's motion to intervene will not delay the course of this litigation nor prejudice any party in the case; this motion to intervene is timely.

      B.    **The Tribe Has Legally Protected Interests at Stake.**

Rule 24(a) requires an applicant for intervention to possess an interest relating to the

property or transaction that is the subject matter of the litigation. "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and no specific legal or equitable interest need be established." *Montana Wilderness Ass'n*, 647 F.3d at 897 (internal quotations omitted). Furthermore, "to demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id*.

Here, the applicant is a sovereign nation, the Yurok Tribe, that has managed the lands and waters that the northern spotted owl calls home since time immemorial. Williams-Claussen Decl. ¶ 3. If the Plaintiff's prayer for relief is granted, the Tribe would suffer an injury-in-fact due to the lack of a science-based and humane control program for the invasive barred owl, which is currently threatening the northern spotted owl's existence. *Id*. at ¶¶ 5-15; *Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) ("[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity" (citations omitted)). Such injury would be redressed through the Tribe's participation in this case, where the Tribe intends to explain the harm FOA's lawsuit could cause to Tribal sovereignty and Tribal resources including the northern spotted owl, which could help prevent FOA's request for relief from being granted.

        C.      **If Successful, FOA's Action Would Impair the Tribe's Interests.**

An applicant for intervention as of right must be "so situated that the disposition of the action *may* as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a) (emphasis added). Applying this impairment requirement, the Ninth Circuit has explained that "if an absentee would be substantially affected in a practical sense by the

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO INTERVENE,
*Friends of Animals v. Morrison et al.*, 3:24-cv-01928-AN

9

SILVIX RESOURCES
4107 NE Couch Street
Portland, Oregon 97232

determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822 (internal quotations omitted). This inquiry "'is not limited to consequences of a strictly legal nature.'" *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir 1995) (quoting *Natural Res. Def. Council v. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

In this suit, FOA seeks a court order enjoining and vacating FWS's decision to develop and implement a barred owl control program to preempt the extinction of the Threatened northern spotted owl. If this Court grants FOA's request, the invasive barred owl will continue to expand its territory and eventually push the northern spotted owl to extinction throughout its range. Such a result would irreparably harm the Tribe's interests. Williams-Claussen Decl. ¶¶ 5-15; *see, e.g., Natural Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (granting intervention as of right to industry groups in a FACA case that could "nullify" the group's efforts).

Courts have found sufficient impairment to sustain intervention for Native American Tribes in suits such as this. *See, e.g., Arizona v. California,* 460 U.S. 605 (1983), *decision supplemented*, 466 U.S. 144 (1984) (granting Tribal motion to intervene to protect and enhance Tribal water rights); *Metcalf v. Daley*, 214 F.3d 1135 (9th Cir. 2000) (Tribe granted intervention to protect Tribal hunting rights in legal dispute between conservation interests and the federal government); *San Luis & Delta-Mendota Water Auth. v. Haugrud*, 848 F.3d 1216 (9th Cir. 2017), *as corrected* (Mar. 23, 2017) (Tribes granted intervention to protect Tribal Treaty resources in litigation between state and federal government regarding water use). Because the Tribe is so situated that the disposition of this action may, as a practical matter, impair its ability to protect its interests in spotted owl conservation and recovery, the Tribe satisfies Rule 24(a)'s

impairment-of-interest requirement.

### D. The Tribe's Interests May Not Be Adequately Represented by Existing Parties to the Litigation.

Finally, an applicant for intervention as a matter of right must show that its interests may not be adequately represented by the existing parties to the litigation. An "applicant-Intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (emphasis in original), *abrogated in part on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *see also*, *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317-18 (D.C. Cir. 2015) (explaining that the existence of different governmental and private interests supports intervention) (citation omitted). "A proposed intervenor is adequately represented if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998). Because none of the current parties can represent the Tribe's interests as a sovereign nation in this matter, intervention of right is appropriate.

Plaintiff's interests are directly adverse to those of the Tribe. FOA seeks to vacate and enjoin the implementation of FWS's barred owl control program, while the Tribe has advocated for all necessary actions to prevent the extinction of the northern spotted owl, including undertaking barred owl control on its lands. FOA simply does not and cannot represent the Tribe's interests and is indeed directly contrary to the Tribe's interests.

Federal Defendants' interests may also be adverse to those of the Tribe's. *See People for*

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO INTERVENE,
*Friends of Animals v. Morrison et al.*, 3:24-cv-01928-AN

11

SILVIX RESOURCES
4107 NE Couch Street
Portland, Oregon 97232

*the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) (government's mandate to design and enforce an entire regulatory system precludes it from adequately representing one party's interest in it); *Dimond v. D.C.*, 792 F.2d 179, 192-93 (D.C. Cir. 1986) (finding an agency "would be shirking its duty were it to advance [an individual's] narrower interest at the expense of its representation of the general public interest"). The Federal government's frequent reluctance to adequately conserve the northern spotted owl and its Critical Habitat – including refusing to initially list the northern spotted owl under the Endangered Species Act, refusing to uplist the species under the Act, failing to designate Critical Habitat for the species, reducing the extent of Critical Habitat once designated, authorizing incidental take of northern spotted owls, and otherwise failing to protect sufficient habitat for the species – particularly following changes in political administration, highlights the risk that Federal Defendants may not adequately represent the Tribe's interests. *See, e.g., Western Council of Industrial Workers v. Secretary of Interior*, No. 02-6100-AA (D. Or. 2002) (FWS settled timber industry suit over owl protected status and designated critical habitat); *Carpenters Industrial Council et al. v. Salazar et al.*, 1:13-cv-00361-RJL (D. DC 2013) (challenge to 2012 Critical Habitat designation); *Klamath-Siskiyou Wildlands Ctr. et al. v. Nat'l Oceanic & Atmospheric Admin. et al.*, 99 F. Supp. 3d 1033 (N.D. Cal. 2015) (challenge to 50-year habitat conservation plan pertaining, in part, to northern spotted owl management); *Audubon Soc'y of Portland et al. v. U.S. Fish and Wildlife Serv.*, 3:21-cv-00443-JR (D. Or. 2021) (challenge to 2020 Critical Habitat designation); *Environmental Protection Information Center et al. v. U.S. Fish and Wildlife Serv.*, 3:20-cv-08657-LB (N.D. Cal. 2021) (challenging failure to uplist northern spotted owl to Endangered). Further, "[a]lthough there may be a partial congruence of interests, that does not guarantee the adequacy of representation." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736-37 (D.C. Cir. 2003)

MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO INTERVENE,
*Friends of Animals v. Morrison et al.*, 3:24-cv-01928-AN

12

SILVIX RESOURCES
4107 NE Couch Street
Portland, Oregon 97232

(granting intervention where Federal defendant and movant's interests "might diverge during the course of litigation" and noting that that court "has often concluded that governmental entities do not adequately represent the interests of aspiring intervenors"); *see also Berg,* 268 F.3d at 816-17 (accord).

Courts in this Circuit regularly grants motions to intervene by Tribes in similar suits against the Federal government when Tribal resources and interests are present. *See, e.g., Metcalf*, 214 F.3d 1135; *San Luis & Delta-Mendota Water Auth*., 848 F.3d 1216. Accordingly, given the minimal showing necessary to find inadequate representation, the Court should grant the Tribe's motion to intervene as of right as Defendants.

## II. ALTERNATIVELY, THE TRIBE SATISFIES THE STANDARD FOR PERMISSIVE INTERVENTION.

As detailed above, the Tribe meets the requirements for intervention as of right under Rule 24(a). However, if this Court denies intervention as of right, the Tribe requests the Court for leave to intervene under Rule 24(b). "All that is necessary for permissive intervention is that Intervenor's claim or defense and the main action have a question of law or fact in common." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (quoting Rule 24(b)) (internal quotations omitted), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

The Tribe merits, at minimum, permissive intervention. First, as demonstrated above, the case is at a preliminary stage; no significant milestones have yet occurred in this case, and the Tribe's motion is timely. The Tribe does not intend to bring new claims. Instead, it intends to oppose the claims and requests for relief made by FOA in this action and to offer defensive arguments, all of which necessarily share questions of law and fact in common with the central issues in this case. The Tribe intends to join the existing Defendant-Intervenors in all arguments,

and its intention to comply with the Court's briefing schedule further demonstrates that the Tribe will cause no prejudice or undue delay to the parties. If intervention is granted, the Tribe intends to support the efficient adjudication of the case.

The Tribe seek intervention to ensure that this Court is presented with a key perspective – that of a sovereign nation with direct experience in implementing barred owl control to the benefit of the northern spotted owl – on the issues involved in this case that may aid the Court's review. The Tribe has gained particular knowledge and expertise regarding the northern spotted owl, its conservation, and management of its habitat because the Tribe has been on the lands at issue since time immemorial. The Tribe has also gained experiential knowledge of barred owl management on those lands in more recent times. The Tribe, in conjunction with the existing Defendant-Intervenors, brings a unique perspective and expertise that would ground their targeted briefing and would complement the Federal government's defense. *Cf. Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (granting intervention for movant to protect its own interests and where it "may also be likely to serve as a vigorous and helpful supplement to EPA's defense").

The Tribe has a sovereign's interest in the nonconsumptive use and enjoyment of the northern spotted owl and its habitat, as well as the broader forested ecosystem upon which the northern spotted owl and myriad wildlife depend. Given the importance of the issues involved in this case, the stake the Tribe has in the lawful and scientific management of the northern spotted owl and its habitat, and the early stage of the litigation, the Court should allow permissive intervention.

## CONCLUSION

"Resolution of this case will decidedly affect Applicants' legally protectable interests and

there is sufficient doubt about the adequacy of representation to warrant intervention." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 824 (internal quotation marks omitted). For the reasons set forth above, the Yurok Tribe requests that the Court grant it intervention as of right or, in the alternative, permissive intervention.

Dated: September 5, 2025                Respectfully submitted,

                                        /s/ Susan Jane M. Brown
                                        Susan Jane M. Brown (OSB #054607)
                                        SILVIX RESOURCES
                                        4107 NE Couch Street
                                        Portland, OR  97232
                                        (503) 680-5513
                                        sjb@silvix.org

                                        *Attorney for Proposed Defendant-Intervenor Yurok Tribe and Defendant-Intervenors Environmental Protection Information Center, Klamath-Siskiyou Wildlands Center, Umpqua Watersheds, Conservation Northwest, and Marin Audubon Society*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025 I electronically filed the foregoing *MOTION TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES* with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants, including the following:

DAVID A. BAHR (Oregon Bar No. 901990)
Bahr Law Offices, P.C.
1035 ½ Monroe Street
Eugene, OR 97402
(541) 556-6439
davebahr@mindspring.com

JENNIFER BEST, *pro hac vice* application pending (Colorado Bar No. 46549)
STEPHEN HERNICK, *pro hac vice* application pending (Colorado Bar No. 54679)
Friends of Animals, Wildlife Law Program
7500 E. Arapahoe Road, Suite 385
Centennial, CO 80112
(720) 949-7791
jennifer@friendsofanimals.org
shernick@friendsofanimals.org

*Counsel for Plaintiff*

                                             */s/ Susan Jane M. Brown*
                                             Susan Jane M. Brown